## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MOIRA TUCK, Administratrix**<br>**of the Estate of Andrew G. Tuck,**<br>**deceased,**<br>　　　　　　　　　**Plaintiff**<br><br>　　　　**v.**<br><br>**JARRED ALAN CALHOUN and**<br>**KNIGHT TRANSPORTATION, INC.,**<br>　　　　　　　　　**Defendants**<br>　　　　**v.**<br><br>**NATIONAL FREIGHT, INC.; MARK**<br>**CUNNINGHAM; and LUZERNE COUNTY,**<br>**PENNSYLVANIA,**<br>　　　　　　**Third-Party Defendants** | **No. 3:08cv2213**<br><br>**(Judge Munley)** |

## MEMORANDUM

_____Before the court for disposition are a motion for summary judgment filed by Defendant Luzerne County and a motion for partial summary judgment filed by Defendants Jarred Alan Calhoun and Knight Transportation, Inc.  The motions have been fully briefed and are ripe for disposition.

**Background**

The general background facts are largely undisputed by the parties.  Plaintiff's Decedent, Andrew G. Tuck, died in an truck/motorcycle accident on June 12, 2008.  On that day, Tuck was operating a 2005 Buell motorcycle.  He was stopped on the motorcycle behind a 2008 Peterbilt tractor truck which in turn was stopped at a traffic light on Crestwood Drive, Wright Township, Luzerne County, Pennsylvania.  The traffic light was at the intersection of Crestwood Drive and State Route 309.  Defendant Jarred Calhoun was operating the tractor for its owner, Defendant Knight Transportation, Inc.

A National Freight tractor trailer operated by Third-Party Defendant

Mark Cunningham approached the intersection on Route 309 and made a right hand turn at the intersection from Route 309 onto Crestwood Drive. Calhoun put his Peterbilt in reverse gear and backed up, evidently to provide more room for Cunningham to make the turn. In backing up, the Peterbilt tractor rolled over both Tuck and his motorcycle. Tuck sustained fatal injuries.

Based upon these facts, the plaintiff filed the instant action raising the following five counts: Count I - negligence against Calhoun and Knight; Count II - negligence against Knight; Count III - punitive damages against Calhoun and Knight; Count IV - wrongful death against Calhoun and Knight; and Count V - a Survival Action against Calhoun and Knight.[1] (Doc. 1, Compl.).

Calhoun and Knight then filed a Third-Party Complaint against National Freight, Inc.; Mark Cunningham; Luzerne County, Pennsylvania and Pennsylvania Department of Transportation (hereinafter PennDOT). The Third-Party Complaint raises the following four counts: Count I - negligence against Calhoun; Count II - negligence against National Freight, Inc.; Count III - negligence against Defendant Luzerne County, Pennsylvania; and Count IV - negligence against PennDOT. (Doc. 13, Third-Party Compl.) PennDOT filed a motion for dismissal from the case, which the court granted. (Doc. 48, Court Order dated Oct. 6, 2009).

After the close of discovery, Defendant Luzerne County filed a motion for summary judgment with regard to the Third-Party Complaint. (Doc. 54). Defendants Calhoun and Knight filed a joint motion for partial

---

[1]On June 9, 2010, plaintiff filed an amended complaint that raises the same causes of action. (Doc. 77, Amended Compl.).

summary judgment (Doc. 60) and Defendants National Freight and Cunningham moved to join in that motion.  (Doc. 63).  These motions are now ripe for disposition.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248

(1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

As noted above,  the original defendants and Third-Party Defendant Luzerne County have filed motions for summary judgment.  We will address each separately beginning with Luzerne County's motion.

**I.  Luzerne County's Motion for Summary Judgment**

Third-Party Defendant Luzerne County raises the following five issues: 1) no record facts establish negligence on its part; 2) no evidence supports the assertion that the subject intersection was improperly designed, constructed and/or maintained; 3) even if Luzerne County breached a duty owed to the plaintiff, such a breach was not the proximate cause of the accident; 4) governmental immunity shields Luzerne County from liability; and 5) the alleged defective condition of the intersection did not cause the fatal injuries at issue.  We will address only issue number one as we find it is dispositive.[2]

---

[2]Issue one is intertwined with issues two and three, and thus the court will discuss those topics as necessary to fully analyze the first issue.

4

The Third-Party Complaint filed by Jarred Alan Calhoun and Knight Transportation, Inc., (hereinafter "Third-Party Plaintiffs") asserts a negligence cause of action against Luzerne County.[3]  Luzerne County now argues that judgment in its favor is appropriate as the Third-Party Plaintiffs cannot establish any of the elements of negligence.

Under Pennsylvania Law, the elements of negligence are:  "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages."  Grossman v. Barke, 868 A.2d 561, 566 (Pa. Super. Ct. 2005).

The Third-Party Plaintiffs allege that Luzerne County was negligent in failing to maintain the intersection of Crestwood Drive and State Route 309 in a reasonable and safe condition; failing to use proper engineering and design standards with regard to pavement markings; failing to use reasonable care in ascertaining the danger of the condition created by its failure to use proper engineering and design standards; failing to properly inspect, maintain and/or keep safe the intersection; failing to warn the public of the dangers of the intersection; and failing to remedy the dangerous condition at the intersection.  (Doc. 13, Third-Party Compl. ¶ 31).

Generally,  the Third-Party Plaintiffs assert that Luzerne County was negligent in failing to use proper engineering and design standards with regard to pavement markings in the westbound lane of Crestwood Drive at the intersection of State Route 309.  Specifically, they allege that the "stop bar" painted on the roadway lane directing vehicles to stop at a certain

---

[3]The original plaintiff asserts no causes of action against Luzerne County.

point when the traffic signal is red was placed too close to the intersection. According to the Third-Party Plaintiffs, the "stop bar" allowed vehicles to park so close to the intersection that tractor trailers could not safely turn onto Crestwood Drive from Route 309.

The law provides that a county has a duty to make its highways reasonably safe for their intended purpose. McCalla v. Mura, 649 A.2d 646 (Pa. 1994). This obligation on the part of the county can extend to placing appropriate traffic-control devices, such as the "stop bar" at issue. Starr v. Veneziano, 747 A.2d 868, 873 (Pa. 2000). A plaintiff must demonstrate three elements to establish that a local government agency had a duty to install a traffic control device. Id. These elements are:

> 1) the municipality had actual or constructive notice of the dangerous condition that caused the plaintiff's injuries;
> 2) the pertinent device would have constituted an appropriate remedial measure; and
> 3) the municipality's authority was such that it can fairly be charged with the failure to install the device.
> Id.

Third-Party Plaintiffs argue that these elements have been met. We disagree, and our analysis follows.

## 1. Actual or constructive notice

The first issue is whether the county had actual or constructive notice of the alleged dangerous condition; that is, that the stop bar and the lane lines defining the left-turn lane were placed too close to the intersection. Id. The Third-Party Plaintiffs assert that Luzerne County had constructive notice of the dangerous condition. The parties do not dispute that the stop bar and lines at issue had been worn almost completely away by repeated encroachment on the left turn lane by vehicles turning off of Route 309

6

onto Crestwood Drive.  These lines were located on the road maintained by the county.  The Third-Party Plaintiffs argue that had they been placed a sufficient distance from the intersection vehicles turning onto Route 309 would not have had to drive over them and the lines would not have worn away.  The Third-Party Plaintiffs argue that the county had sufficient opportunity to notice this condition when salting the roadway in the winter.  Based upon these facts, a jury could conclude that Luzerne County had constructive notice of the condition at issue.

### 2.  Pertinent device was an appropriate remedial measure

The second factor is whether the pertinent device would have constituted an appropriate remedial measure.   Starr, 747 A.2d at 873.  The "pertinent device" in the instant case is a stop bar and other appropriate road markings placed farther back from the intersection to provide a safe turning radius for trucks turning onto Crestwood Drive.  The Third-Party Plaintiffs cite to no expert testimony as to whether a stop bar placed farther from the intersection would have prevented the accident.

Instead, the Third-Party Plaintiffs assert that, prior to the accident, PennDOT commissioned an engineering study of the intersection and began a construction project that eventually made it easier for tractor trailer trucks to turn right off of State Route 309 onto Crestwood Drive.  The Third-Party Plaintiffs argue that "[t]he intersection drawings utilized by PennDOT's engineering consultants demonstrate that the Westbound left-turn lane was located too closely to the intersection[.]"  (Doc. 66, Brief at 9).  Luzerne County, points out, however, that the Third-Party Plaintiffs have presented no relevant evidence that the markings were negligently designed, constructed or maintained.  Indeed, the Third-Party Plaintiffs cite

7

to no expert report for this proposition and Steven W. Rickard, expert witness for Defendants National Freight, Inc. and Mark Cunningham, stated that "I find no design fault with the intersection at the accident site that caused or contributed to the occurrence of this accident." (Doc. 54-4, Rickard Report at 53). Moreover, the Third-Party Plaintiffs' own expert report fails to indicate that the accident occurred due to improper engineering and design standards relating to pavement markings. Rather, the report indicates that: "The right turn from SR 309 onto Crestwood Drive was evaluated utilizing specifications of typical tractor-trailers. ... The engineering analysis indicates that the geometry of the roadway is such that if the tractor-trailer operator makes a turn tight enough, a typical tractor-trailer can negotiate the right turn without encroaching into the exclusive left-turn lane of Crestwood Drive. The tight turn would involve having the right side trailer tires move as close as practical to the right edge of the paved surface." (Doc. 54-3, Schorr Report at 65, ¶ 28). The Third-Party Plaintiffs also submitted the report of Dennis A. Toaspern regarding the accident. His report does not provide any findings to support the Third-Party Plaintiffs' claims. (Doc. 54-4, Dennis Toaspern Report at 19-31).

The Third-Party Plaintiffs have not presented sufficient evidence for a jury to conclude that the movement of the stop-bar would have been an appropriate remedial measure to prevent the accident. They merely cite to an engineering study by PennDOT which determined that the stop bar would be placed farther back. The Third-Party Plaintiffs cite nothing in the study to indicate that the bar's initial location was unsafe and the various experts opine that the placement of the stop bar was not the cause of the

accident.

### 3. The municipality's authority to make the changes

The final factor is whether the municipality's authority is such that it can fairly be charged with the failure to install the lines. Starr, 747 A.2d at 873. The Third-Party Plaintiffs have not presented such evidence. From the evidence presented, it appears that PennDOT, not Luzerne County, was charged with painting and placing the lines.

Luzerne County argues that it was not responsible for the design or construction of the subject intersection, therefore, it owed no duty to the plaintiff's decedent. Luzerne County asserts that the PennDOT bears the duty of erecting and maintaining traffic control devices, including pavement markings on the subject roadway. After a careful review, we agree and find that the Third-Party Plaintiffs have failed to establish that Luzerne County owed a duty to the plaintiff in the instant case.

The law provides:

> Erection of traffic-control devices at intersections
>
> The department on State-designated highways, including intersections with local highways, and local authorities on intersections of highways under their jurisdiction may erect and maintain stop signs, yield signs or other official traffic-control devices to designate through highways or to designate intersections at which vehicular traffic on one or more of the roadways should yield or stop and yield before entering the intersection.

75 PENN. CONS. STAT. ANN. § 6124.

As the accident at issue took place at the intersection of a state-designated highway and a local highway, the state had the authority to erect traffic control devices. Id. The Third-Party Plaintiffs have cited to no authority to indicate that Luzerne County is granted the discretion to do so.

9

Accordingly, they cannot be held to have a duty to the plaintiff to provide safe traffic control devices.

In fact, at approximately the time of the subject accident, PennDOT was engaged in a construction project at this intersection which included painting the stop bar on the roadway. Third-Party Defendant Luzerne County was not involved with this construction project. (Doc. 54-2, Luzerne County Ex., Dep. of Jeffrey Novitski, Assistant Construction Manager for PennDOT, at 59). Luzerne County's Chief Engineer, Joseph Gibbons, indicated that Luzerne County was not involved with this project at all. (Doc. 54-2, Luzerne County's App. at 58a, Gibbons Dep. at 39).

Based upon our review of these factors, we find that Luzerne County did not owe a duty to the plaintiff with respect to the placement of the stop bar. While the jury might conclude that Luzerne County had constructive notice of the condition of the painted bars, Third-Party Plaintiffs have not provided evidence that placing the stop bar farther back would have been an appropriate remedial action in the instant case or that Luzerne County had the authority to make the changes. Thus, judgment will be granted to Luzerne County, and it shall be dismissed from this case.

## II. Defendant Jarred Alan Calhoun and Knight Transportation, Inc.'s motions for partial summary judgment

The second motion is a motion for partial summary judgment filed by Defendants Jarred Alan Calhoun and Knight Transportation, Inc. These defendants seek summary judgment on plaintiff's claims for: A) punitive damages; B) negligent training supervision and entrustment on the part of Defendant Knight; C) emotional distress damages and D) "specialized

care" damages.[4]  We will address these issues in turn.

## A.  Punitive damages

Plaintiff's complaint seeks punitive damages against the defendants under the survival claim.  (Doc. 7, Am. Compl. Ct. III).  Defendants seek summary judgment on the punitive damages claim.

Under Pennsylvania law, a jury may award punitive damages only where evidence shows that a defendant knows, or has reason to know of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to such risk.  Burke v. Maassen, 904 F.2d 178, 181-82 (3d Cir.1990) (citing Martin v. Johns-Manville Corp., 494 A.2d 1088, 1097 (Pa. 1985)).  The Pennsylvania Supreme Court has explained as follows:

The Pennsylvania Supreme Court has explained the punitive damages standard as follows:

> The standard governing the award of punitive damages in Pennsylvania is settled. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.

Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (internal citations omitted).

Defendants argue that the record fails to establish that Defendant Calhoun acted with the necessary mental state to justify the award of punitive damages.   The court disagrees and finds that the plaintiff has

---

[4]Defendants National Freight and Mark Cunningham filed a motion to join in the motions regarding plaintiff's damages for emotional distress and for "specialized services."  This motion will be granted.

11

presented sufficient evidence to defeat the defendants' motion on this point.

The plaintiff's evidence includes the following:  Defendant Calhoun was a trained professional driver who knew that a blind spot existed behind his truck and that he had an obligation to verify that no one was behind him before backing up.  (Doc. 54-3, Pl. Expert Report of Guntharp at 2).  As part of his training, Defendant Calhoun had been provided an orientation manual that provides that a driver should walk around a vehicle before backing up.  Further the manual provided that the best way to back a tractor trailer is not to do it at all.  (Doc. 71-6, Pl. Ex. 4, Calhoun Dep. 20-21, 34).  Before the accident, he had been aware that a motorcycle was approaching behind him.  (Doc. 54-3, Pl. Expert Report of Guntharp at 2).  Regardless, Defendant Calhoun attempted to back down a public road without first checking to ensure that it was safe to do so.  (Id.)

Based on this evidence, a jury could conclude that Defendant Calhoun acted sufficiently wilfully, wantonly and recklessly so as to impose punitive damages.  Therefore, it is inappropriate to grant summary judgment to the defendants on this issue.

## B.  Negligent training, supervision and entrustment on the part of Defendant Knight

Plaintiff's complaint seeks damages from Defendant Knight , the trucking company, on the basis that Knight negligently hired, trained and retained Defendant as a driver and negligently inspected, maintained and released for use the truck at issue.[5]  Defendant argues for summary

---

[5]Specifically, the amended complaint alleges Defendant Knight's negligence as follows:

judgment on these claims on that basis that plaintiff has presented no evidence to support them.  Defendant Knight also argues that plaintiff may not proceed on a theory of direct liability against the trucking company because it would be vicariously liable for Defendant Calhoun's negligence.

First, the original defendants allege that because it is conceded by Defendant Knight that Calhoun was acting in the course and scope of his duties at the relevant time, Knight would be vicariously liable for Calhoun's

----

a) In then and there failing to properly train the Defendant, Jarred Calhoun, for over the road driving, especially in the "city-like" conditions, where reversing from traffic lights is necessary;

b) In then and there failing to enforce the Department of Transportation regulations concerning the amount of hours and distances which its drivers may be on the road, specifically with regard to Defendant, Jarred Calhoun;

c) In then and there failing to enforce its own procedures concerning the amount of hours and distances which its drivers may be on the road, specifically with regard to the Defendant, Jarred Calhoun;

d) In then and there maintaining the Defendant, Jarred Calhoun, as a driver, despite his adverse driving history;

e) In then and there providing the Defendant, Jarred Calhoun, with a vehicle which was in an unsafe condition;

f) In then and there failing to inspect or enforce Department of Transportation and/or internal safety regulations and procedures for the tractor;

g) In then and there permitting the Defendant, Jarred Calhoun, to operate the Defendant's over the road equipment, when he was not qualified to do so;

h) In then and there failing to enforce Department of Transportation and/or internal safety regulations and procedures for operation of the tractor over public highways.

(Doc. 77, Am. Compl. ¶ 18).

negligence.  In this situation, because Knight can be vicariously liable, evidence of direct liability- for negligent supervision and monitoring of its driver- is inadmissible and plaintiff may not proceed on such claims directly against Knight.

In support of this position, Calhoun and Knight cite to two cases which bear examination.  The first case is Holben v. Midwest Emery Freight System, 525 F. Supp. 1224 (W.D. Pa. 1981).  The facts of Holben are similar to the instant case.  The plaintiff was involved in an automobile accident with a truck.  Id.  The trucking company admitted that the truck driver was acting within the course of his employment with them.  Thus, the truck company would be vicariously liable.  Id.  The plaintiff sought to amend his complaint to add a negligent entrustment claim against the trucking company.  Id.  The court found that the direct claim against the truck driver and the vicarious liability claim against the trucking company should not proceed simultaneously.  The court reasoned that to allow them both to proceed would lead to introduction of evidence in the case of the trucking company of prior accidents of the driver which would be very prejudicial, irrelevant and inadmissible in the case against the driver.  Id. at 1225.

The court, however, did not dismiss the negligent entrustment claim because it also included a viable claim for punitive damages.  This claim would not have been included in a suit solely against the driver.  Id. at 1225.  Therefore, the court left the independent claim against the trucking company in the case so as not to dispose of the plaintiff's punitive damages claim against the trucking company.

The second case cited by the defendants is Vargo v. Coslet, No.

14

3:02cv676, slip op. (M.D. Pa. Kosik, J., Dec. 20, 2002). This case applies an analysis similar to that used in <u>Holben</u>. The <u>Vargo</u> court found, however, that no viable punitive damages claim had been plead. Accordingly, the court granted summary judgment on the negligent entrustment claim. (<u>Id.</u> at 3 - 4).

In the instant case, the defendant has alleged punitive damages against Defendant Knight. As set forth above, the punitive claim remains viable. Therefore, judgment on the separate claims against Knight is not appropriate.

Defendant Knight also claims that the tort claims directed at it are flawed because plaintiff has no evidence to suggest that Knight was negligent with regard to hiring, training and retaining Defendant Calhoun and in inspecting, maintaining or releasing its truck for use on the highway.

Plaintiff, however, points to evidence that Defendant Calhoun falsified his driving records in order to operate more hours than permitted by federal regulations. Plaintiff's expert Walter A. Guntharp indicates as follows:

> 7. Mr. Calhoun's logs were routinely falsified so that he could operate in excess of the hours of service regulations published in the Federal Motor Carrier Safety Regulations (FMCSR).
> 8. Mr. Calhoun, as an experienced driver, was aware that the FMSCR were published to promote safe operation and minimize the effects of driver fatigue on safety. However, in spite of this knowledge, Mr. Calhoun purposely chose to falsify federal documents and operate while fatigued in order to haul additional load and generate more revenue.
> 9. Knight Transportation had an obligation to monitor Mr. Calhoun's logs and prevent the type of unsafe operation that falsification created. However, in spite of having records to compare to the logs, Knight failed to check the logs or to control the actions of Mr. Calhoun. This failure is a

15

violation of the requirements set forth in the FMSCR.

(Doc. 71-11, Report of Guntharp at 3). Knight, according to plaintiff's expert, had an obligation to monitor Calhoun's driving logs and prevent the unsafe operation caused by the falsification. (Id.) In sum, plaintiff's evidence is that the driver falsified his logs in order to drive more miles than allowed by federal law. Defendant Knight had an obligation to monitor his logs, and the jury could find that it did not. A jury could conclude that Knight's failure to monitor the logs allowed Calhoun to drive while fatigued and that his fatigue was the cause of him not getting out of the truck and checking behind him before backing up. Accordingly, summary judgment on this issue is not appropriate.[6]

## C. Plaintiff's damages claims for emotional distress or anguish, bereavement and grief

Next, Defendants Calhoun and Knight move for summary judgment on plaintiff's claims for emotional distress or anguish, bereavement and grief. As noted above, plaintiff asserts a cause of action for the benefit of the decedent's children under the Pennsylvania Wrongful Death Act, 42 PENN. CONS. STAT. ANN. § 8301. Under the Wrongful Death Act, surviving children are entitled to damages to compensate them for the loss of services, maintenance and gifts that the deceased father would have provided them. Included in "services" are matters such as companionship, comfort, society, guidance, solace and protection according to the plaintiff. Defendant seeks judgment on any claims that the plaintiff have made for

---

[6]Plaintiff has not presented evidence that Calhoun's vehicle was unsafe. Therefore, judgment will be granted to the defendants with regard to any allegations that Knight was negligent in allowing the use of an unsafe vehicle.

emotional distress or anguish, bereavement and grief on behalf of the decedent's children.[7]

Plaintiff asserts that no damages for emotional distress or anguish, bereavement and/or grief are sought. Rather, only damages available under the Wrongful Death Act are sought, including, compensation for loss of companionship, comfort and solace. Defendant replies that damages for "solace" are not available under the Pennsylvania Wrongful Death Act. Accordingly, the court must determine which damages are allowed under the Pennsylvania Wrongful Death Act.

A Wrongful Death Action is not meant to compensate the decedent, but rather to compensate the decedent's survivors for the damages they suffered due to the decedent's death. Machado v. Kunkel, 804 A.2d 1238, 1245 (Pa. Super. Ct. 2002). With regard to damages the statute specifies as follows: "**Special damages. -** In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death." 42 PENN. CONS. STAT. ANN. § 8301(c). Included in these damages are the value of the services the decedent would have provided to the family such as guidance, tutelage and moral upbringing. Machado, 804 A.2d at 1246. The Pennsylvania Superior Court has also referred to these

---

[7]Defendants seek judgment with regard to the damages sought under the Wrongful Death Act on behalf of the decedent's wife. The Amended Complaint, however, makes it clear that the Wrongful Death Act claim is asserted solely for the benefit of the decedent's children. (Doc. 77, Am. Compl. ¶¶ 22-23). The defendant's motion on this issue, therefore, will be denied as moot.

17

damages as damages for "the loss of companionship, comfort, society and guidance[.]" Id. at 1245.

Defendants' position is that damages for solace, or solatium damages, are not permissible under the Wrongful Death Act. "Solatium, or solace, describes a type of monetary damages awarded the decedent's survivors to recompense them for their feelings of anguish, bereavement, and grief caused by the fact of the decedent's death." Sinn v. Burd, 404 A.2d 672, 675 n.3 (Pa. 1979). Such damages are not available under the Wrongful Death Act. Id., Mazzagatti v. Everingham by Everingham, 516 A.2d 672, 679 (Pa. 1986); Keller v. Feasterville Family Health Care Center, 557 F. Supp. 2d 671, 687 (E.D. Pa. 2008). Accordingly, the defendants' motion for summary judgment will be granted to the extent that the plaintiff's amended complaint seeks solatium damages as defined above.

**D. Plaintiff's economic expert/specialized care**

Plaintiff has retained Andrew Verzilli, PhD to serve as an economic expert. He computes "potential specialized care" services that the deceased may have provided to his two autistic children at $3,259,256.00 each for a total of $6,518,512.00. The Defendants move for judgment on the issue of Verzilli's report. We find that defendants do not truly argue for judgment on this matter. Rather, they argue the weight that the jury should give this evidence. For example, the defendant challenges the amount of hours that the decedent would have utilized in caring for the children and the number of years that such care would be provided. Accordingly, we find defendants' position is better suited for cross-examination and argument, than for a motion for summary judgment. The motion for summary judgment on this issue will thus be denied.

18

**Conclusion**

For the reasons set forth above Third-Party Defendant Luzerne County's motion for summary judgment will be granted, and Luzerne County will be dismissed from the case. The motion for summary judgment filed by Defendants Jarred Alan Calhoun and Knight Transportation will be granted in part and denied in part. It will be granted to the extent that plaintiff seeks solatium damages under the Wrongful Death Act, as defined above, and it will be granted with regard to the allegations that Defendant Knight allowed Defendant Calhoun to drive an unsafe vehicle. The motion will be denied in all other respects including: punitive damages, negligent training supervision and entrustment on the part of Defendant Knight and plaintiff's economic expert/specialized care. Remaining in the case, therefore, are the following: plaintiff's negligence causes of action, except for the claim that Defendant Knight allowed Defendant Calhoun to drive an unsafe vehicle; plaintiff's claim for punitive damages; the Wrongful Death Action and the Survival Action. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MOIRA TUCK, Administratrix : No. 3:08cv2213
of the Estate of Andrew G. Tuck, :
deceased, :
           **Plaintiff** : **(Judge Munley)**
    :
      **v.** :
    :
JARRED ALLEN CALHOUN and :
KNIGHT TRANSPORTATION, INC., :
          **Defendants** :
      **v.** :
    :
NATIONAL FREIGHT, INC.; MARK :
CUNNINGHAM; and LUZERNE COUNTY, :
PENNSYLVANIA, :
     **Third-Party Defendants** :

## ORDER

\_\_\_\_\_**AND NOW**, to wit, this 2nd day of February 2011, it is hereby

**ORDERED** as follows:

    1) Third-Party Defendant Luzerne County's motion for summary

judgment (Doc. 54) is **GRANTED**;

    2) Defendants Jarred Alan Calhoun and Knight Transportation, Inc.'s

motion for summary judgment is **GRANTED** to the extent that plaintiff

seeks solatium damages under the Wrongful Death Act, as defined in the

body of the attached memorandum, and with regard to the allegations that

Defendant Knight allowed Defendant Calhoun to drive an unsafe vehicle.

The motion is **DENIED** in all other respects including:  punitive damages,

negligent training supervision and entrustment on the part of Defendant

Knight and plaintiff's economic expert/specialized care.

    3) Third-Party Defendants National Freight, Inc. and Mark

Cunningham's motion (Doc. 63) to join in the original defendants' motion for summary judgment motion with regard to the emotional distress, anguish, bereavement and grief issue and the specialized services issue is **GRANTED**. The court's ruling with respect to these issues applies equally to the defendants and the third-party defendants.

**BY THE COURT:**

**s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**
